THE STATE *v*. ARNOLD MEDBURY.

The statute of Rhode Island prohibiting the taking of oysters and other shell-fish within the waters or on the shores of the State, by any but persons inhabitants of the State and domiciled therein, is not repugnant to Art. IV. Sec. 2 of the Constitution of the United States, nor to Art. I. Sec. 17 of the Constitution of Rhode Island, nor to any provision in the Charter of Charles II. to the colony of Rhode Island.

(Present—C. J. STAPLES, and Justices BRAYTON and SHERMAN.)

EXCEPTIONS to the rulings of the Court of Common Pleas. At the December term of the Court of Common Pleas 1851, an indictment was returned against the defendant, grounded upon sec. 6 of "an act for the preservation of oysters and other shell-fish within this State," prescribing that "No person shall take any oysters, quahaugs, clams or other shell-fish within the waters or on the shores of this State, unless he be an inhabitant thereof and domiciled therein; and every citizen of any other state or country who shall" violate this act, "shall forfeit and pay the sum of one hundred dollars for each and every offence." (Dig. 1844, p. 533.)

In the indictment it was charged that Arnold Medbury, late commorant of Providence, in the county of Providence, yeoman alias laborer, with force and arms, within the waters of the State of Rhode Island, on the 1st day

of October, 1851, did take large quantities of oysters from said waters, to wit, ten bushels of oysters, he, the said Medbury, then and there not being an inhabitant of said State, nor domiciled therein, but then and there being a citizen of the State of Massachusetts, against the statute, &c. To this, the defendant pleaded not guilty, and in proof of the charge the government called but one witness, a deputy sheriff, who testified that he arrested the defendant, "and while conveying him to Court he said he took the oysters as charged, and he had a right to take them. He took them opposite his residence, in Massachusetts. He is a citizen of Massachusetts, residing there. I understood him that he took ten bushels in all: not all at one time, but for his own use, and that he thought he had a right to do so."

On this evidence, the defendant prayed the Court to rule and instruct the jury as follows: 1. That should the jury believe said testimony to be true, it is not sufficient to justify them in finding a verdict of guilty against the defendant. 2. That if the jury are satisfied that the defendant, at the time the acts charged against him in the indictment were committed, was a citizen of Massachusetts, and domiciled therein, he had a right to take oysters, as charged in the indictment. 3. That the simple fact that the defendant is a citizen of Massachusetts, and domiciled therein, cannot prevent him from taking oysters, as charged in the indictment, provided he does not break any of the laws of the State, regulating the time and manner of taking them, and the quantity to be taken. But the Court refused so to rule, and instructed the jury that if they believed the testimony of the witness to be true, the facts testified to by him were sufficient to maintain the indictment and to authorize the jury to find

a verdict against the defendant: and that if they were satisfied that the defendant was a citizen of Massachusetts and domiciled therein, he had no right to take oysters in the manner charged in the indictment.

The jury, under these instructions, for a verdict of guilty, whereupon the defendant excepted.

*C. B. Farnsworth* for the defendant, and on behalf of the commonwealth of Massachusetts. 1. By the Constitution of the U. S. art. 4, sec. 2, it is provided that " the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." One privilege of all citizens of this State is to take oysters in the free and common fisheries of the State. A citizen of Massachusetts, therefore, prohibited from taking oysters in the public navigable waters of this State, is prohibited from a privilege belonging to all citizens of this State. In the *Inst. lib.* 2, *tit.* 1, *sec.* 2, it is said, *flumina autem omnia et portus, publica sunt. Ideoque jus piscandi omnibus commune est in portu fluminibusque.* See also Bracton, l. 1, c. 12, s. 6; Grot. De jure Belli et Pacis, b. 2, c. 3, s. 9; *Warren* v. *Mathews,* (6 Mod. 63.) Salk. 357; 1 Mod. 105; 8 Ed. 4, 19, a. *Commune,* as used by *Tribonian,* means common to all mankind. *Publica* means belonging to the people of the State. The first part of the paragraph is from *Marcianus* in the Digest 1, 8, 4, 1; the latter part, not very correctly connected by *ideoque,* was added by *Tribonian.* For the latter is not a sequence from the former, but an independent statement. If, however, *commune* were interpreted " common to the people of the State," it would not affect the argument. If, then, the right to fish is common to all the world, or to the citizens of this State, the defendant could not be exclu-

ded from exercising this common right, as a citizen of Massachusetts, any more than he could be prohibited from passing over the common highways of this State, or exercising any other common right of all citizens of this State. 2. The defendant, as a citizen of Massachusetts, had reserved for him, by the Charter of Charles II. a right to fish in these waters for oysters. (Charter, Dig. 1844, p. 7.) This right was a vested right, and not destroyed by the Revolution; 2 Dane's Abr. 689, 690. And the Constitution of this State, art. 1, sec. 17, still preserves the right from infringement. It is not denied by the defendant that the State has a right to regulate the exercise of the right to take oysters, or other fish, by citizens or others, in its waters; but the statute does not profess to be a regulation of the use of such a right, but the absolute destruction of it, in all cases, for all except residents in this State; and the difference between the regulation and the destruction of a right is too obvious for argument.

*Robinson, Attorney General,* for the State, contra, citing *State* v. *Cozzens,* (2 R. I. 563.)

STAPLES, C. J.—The question involved in the exceptions of the defendant is, can the Legislature of Rhode Island legally prohibit citizens of other of the United States from taking oysters in the navigable waters of the State of Rhode Island?

The defendant denies their power so to do, first because such prohibition would be contrary to the Constitution of the United States, art. 4, sec. 2, and second, because the right of citizens of other states to take oys-

ters in said waters is reserved in the Charter and Constitution of Rhode Island.

Article 4, sec. 2, of the Constitution of the United States, provides "that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." This section has been referred to in the argument, as though it conferred on the citizens of each State, all the privileges and immunities which the citizens of the several States enjoy. Such is neither its language nor its import. No Court or Legislature in the Union has ever given such a construction to it; but on the contrary, a marked distinction has ever been made by them between the rights and powers of the citizens of a State, and the rights and powers of all other persons resident within the limits of the State, whether they are citizens of other States or foreigners. To deny the right to every State to make such distinction would be to annihilate the sovereignty of the States, and to establish a consolidated government in their stead. But this section in its terms, confers on the citizens of each State, "all privileges and immunities of citizens in the several States," that is, the rights and powers of citizenship. They are not to be deemed aliens. They are not to be accounted as foreigners, or as persons who may become enemies. They are to have the right to carry on business, to inherit and transmit property, to enter upon, reside in and remove from the territory of each State, at their pleasure, yielding obedience to and receiving protection from the laws. Such are some of the privileges and immunities conferred by this section, and all that are granted by it are of the same character. That the right claimed by the defendant is not one of

these, has been expressly decided in the cases of *Corfield* v. *Coryell*, (4 Wash. p. 376.)

In support of the second point, the counsel for the defendant cites the charter of King Charles II. to the Colony of Rhode Island, (Dig. 1844, p. 7,) where is found the following provision:

"*Provided also*, and our express will and pleasure is, and we do, by these presents, for us, our heirs and successors, ordain and appoint, that these presents shall not, in any manner, hinder any of our loving subjects, whatsoever, from using and exercising the trade of fishing upon the coast of New-England, in America; but that they, and every or any of them, shall have full and free power and liberty to continue and use the trade of fishing upon the said coast, or any of the seas thereunto adjoining, or any arms of the · seas, or salt water, rivers and creeks, where they have been accustomed to fish; and to build and set upon the waste land, belonging to the said Colony and Plantations, such wharves, stages and work-houses, as shall be necessary for the salting, drying and keeping of their fish, to be taken or gotten upon that coast."

Art. 1, sec. 17, of the Constitution of the State, provides that

"The people shall continue to enjoy and freely exercise all the rights of fishery, and the privilege of the shore to which they have been heretofore entitled, under the charter and usages of the State. But no new right is intended to be granted, nor any existing right impaired by this Constitution."

This section of the Constitution leaves the rights of fishery and privilege of the shore, where they were. It neither diminishes or adds to them, so that the rights of the defendant, if at all affected by it, being a citizen of Massachusetts, must be sought for in the charter and usages which existed before its adoption.

The clause of the charter above quoted does not give the right to fish upon the shores of the Colony of

Rhode Island. That was not its intent and object. On the contrary, its design was to declare that the charter then granted should not intrench upon the rights of fishery previously enjoyed. The State of Rhode Island does not now contend that the charter cuts off the right which the defendant claims, or affects it to the injury of the defendant.

But suppose the charter did confer some rights of fishery upon some persons. Does it embrace the right here set up, and confer it upon the defendant? It is very evident from the terms used in relation to the right granted, that it related to the cod fishery, and not to the oyster fishery. The former might require "wharves, stages and work-houses," "for the salting, drying and keeping" of the fish "to be taken or gotten upon the coast," while the latter would not. But if it did include oyster fisheries, the right granted was to be exercised "where they had been accustomed" before and at the date of the charter to exercise it, and the evidence produced did not show that the Seekonk River was one of those places.

The exceptions of the defendant must therefore be overruled.